Marion K. RAMPEL, Individually and as Independent Executrix of the Estate of Susan R. Wascher and as Next Friend of Michael Ryan Heller, Marc William Heller and Erich Peter Heller

v.

Richard L. WASCHER, Jr.

No. 04–92–00075–CV.

Court of Appeals of Texas, San Antonio.

Nov. 12, 1992.

Rehearing Denied Jan. 25, 1993.

Les Mendelsohn, Ricky Poole, Speiser, Krause, Madole & Mendelsohn, Mata, San Antonio, for appellants.

Gail Dalrymple, Phylis J. Speedlin, Clemens & Spencer, Ruth Greenfield Malinas, Cynthia Day King, Ball & Weed, P.C., San Antonio, for appellee.

Before REEVES, C.J., PEEPLES, and GARCIA, JJ.

## OPINION

PEEPLES, Justice.

Plaintiffs appeal from a take-nothing judgment based on an adverse jury verdict. The suit arose from the death of Susan Wascher, who died at home in her hot tub. The defendant is Dr. Richard Wascher, Susan's husband at the time of her death. The plaintiffs are Susan's mother and her three children from an earlier marriage. Plaintiffs asserted causes of action for medical and spousal negligence; Richard denied that there was a physician-patient relationship and denied that he was negligent. The jury made the following findings: that Susan and Richard did not have a physician-patient relationship with respect to her stress and anxiety; that Richard was not negligent as a husband; that Richard was not negligent in any of six specified ways; and that Susan's negligence proximately caused her death. Plaintiffs' points of error make these contentions:

(1) that the jury's failure to find a physician-patient relationship is against the weight of the evidence, and that plaintiffs established a physician-patient relationship as a matter of law;

(2) that the court erred in allowing an expert to testify that there was no physician-patient relationship, and erred in implicitly finding good cause to allow an undisclosed fact witness to testify;

(3) that the evidence is legally and factually insufficient to support the jury's finding that decedent Susan Wascher was negligent, and that Richard judicially admitted that Susan was not negligent; and

(4) that the court erred in failing to instruct the jury that the marital relationship (and the family relationship) may give rise to a duty for a husband (or other family member) to exercise care for his wife (or another family member).

For the reasons stated below, we affirm the judgment.

## I. FAILURE TO FIND PHYSICIAN–PATIENT RELATIONSHIP.

In the wee hours of May 4, 1988, Susan was found near her hot tub with no pulse, blood pressure, or respiration. There was evidence that she had argued with the children that night and was under stress from their plans to move out of the house, together with stress from an impending school exam, and that she had consumed alcoholic beverages that evening along with some of her husband's pills.

In answer to question one, the jury found that there was no physician-patient relationship between Richard and Susan

"with respect to her stress and/or anxiety." Plaintiffs contend that they established a "yes" finding as a matter of law, and that the "no" finding is so against the weight of the evidence as to be manifestly unjust. Because they had the burden of proof, plaintiffs must make two showings to overcome the adverse fact finding as a matter of law. First, they must show that the record, viewed favorably to the verdict, contains no evidence that supports the jury's finding. Second, the entire record must establish the contrary proposition as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). To receive a new trial they must show that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Richard argues that we may not sustain plaintiffs' sufficiency points because they filed a partial statement of facts in this court. But plaintiffs also filed with the trial court a statement of the points they would raise on appeal, and their appellate brief does not depart from the points specified. That complies with Tex.R.App.P. 53(d). Contrary to Richard's arguments, there is nothing in the rule or the case law suggesting that an appellant may not use the rule 53(d) procedure when the appeal challenges the sufficiency of the evidence. *See Schafer v. Connor*, 813 S.W.2d 154, 155 & n. 2 (Tex.1991); *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990).

To establish medical malpractice, plaintiffs had the burden to prove that a physician-patient relationship existed. *See Wilson v. Winsett*, 828 S.W.2d 231, 232 (Tex. App.—Amarillo 1992, writ granted); *Salas v. Gamboa*, 760 S.W.2d 838, 840 (Tex. App.—San Antonio 1988, no writ). The court therefore instructed the jury as follows:

> A physician-patient relationship exists only if the physician has agreed, expressly or impliedly, to render medical services of a specified or general nature to the person claiming such relationship.

> A physician-patient relationship does not exist when either the physician or the patient has terminated the relationship. A patient may terminate the relationship at any time. A physician may terminate the relationship at any time if reasonable provision for adequate medical care is made, or if the patient is not in need of continuing medical care.

Plaintiffs do not complain of these definitions. They attack the jury's failure to find that a physician-patient relationship existed.

On this issue the evidence was conflicting. As plaintiffs point out, there was evidence that Richard had a physician-patient relationship with Susan on the night of her death. Richard was licensed as an osteopath in 1974. He had treated Susan for stress and anxiety beginning in 1984, and had prescribed medications for her as late as February 1988, including a tranquilizer a day or two before. Plaintiffs' expert witness (Dr. Vincent DiMaio) testified that Richard was acting as Susan's treating physician on the evening of her death.

Although a jury's failure to find that a litigant satisfied the burden of proof need not be supported by evidence, we note that there was evidence to support the jury's failure to find a physician-patient relationship. Susan did not seek medical care or advice or medication from Richard on the night of her death. He testified that he was not acting as her physician but as her husband that night. He did not see her take any medication that evening and she did not tell him she had taken any; whatever medication Susan took that evening was taken on her own, he said, without input from him. He did not give her the Soma medicine that she took that night, which had been obtained to alleviate Richard's back condition and not for Susan.

Expert testimony also supported the verdict. Plaintiffs' expert (Dr. DiMaio) and three defense experts testified that a physician-patient relationship does not exist twenty-four hours a day. Dr. DiMaio agreed that when a doctor's wife takes his medicine, he has not "prescribed" the medi-

cine for her. He also said that doctors who treat their families do not have to constantly observe family members as a physician and are not on call all day. In this regard, the jury was entitled to give weight to the fact that Richard was at home and having a drink, which suggests he was not on duty as a doctor. Dr. Waldemar Johannsen testified that he found no indication that Richard was acting as Susan's doctor that evening; he also said that giving medications to family members on an occasional basis does not create a physician-patient relationship.

The issue was for the jury, and its answer was within the evidence. Under the appropriate standards of appellate review, the evidence was both legally and factually sufficient.

## II. TESTIMONY OF EXPERT WITNESS AND FACT WITNESS.

■ Plaintiffs next complain about the court's allowing Dr. Johannsen and Sandra Shellebarger to testify about certain matters. Richard listed Johannsen as an expert to testify about "the pathology and physiology of the respiratory systems as well as *his opinions on the medical aspects of this case.*" (emphasis added). Concerning himself and a different expert, Richard's interrogatory answers stated the scope of expected testimony to be "the physician-patient relationship with Susan Wascher" and "the existence of a physician-patient relationship."

Dr. Johannsen took the stand after Dr. DiMaio had testified earlier in the trial for the plaintiff. Richard's counsel asked Dr. Johannsen this question:

Q. I would like for you to assume that Doctor DiMaio has testified in the case that when there is a relationship between a husband and wife, where the husband or wife is a physician and occasionally treats their spouse, that that relationship does not create a doctor-patient relationship 24 hours a day. What I would like to know, sir, is whether you agree or disagree with Doctor Di-Maio on this point?

A. I agree.

Plaintiffs' counsel had earlier objected that Richard's interrogatory answers had not disclosed that the witness would give an opinion on this issue. The court overruled the objection and allowed the testimony.

Plaintiffs' interrogatory asked Richard to state only the subject matter on which expert witnesses would testify; it did not ask for their opinions. The opinion expressed by Dr. Johannsen concerned the "medical aspects of the case," which is what the interrogatory answer said he would testify about. It is true that the interrogatory answers were more specific concerning the other two experts; the answer said they would testify about "the existence of a physician-patient relationship." But the interrogatory answer as to Dr. Johannsen was broad enough to encompass whether a physician-patient relationship existed, and therefore the court had the discretion to allow the testimony.

■ In any event, any error was harmless. Dr. Johannsen simply agreed with plaintiffs' own witness, Dr. DiMaio. And two other witnesses also said there was no physician-patient relationship. Moreover, Dr. Johannsen later gave essentially the same opinion without objection. Any error was not reasonably calculated to cause, nor did it probably cause, rendition of an improper judgment. Tex.R.App.P. 81(b)(1). Erroneous admission of evidence is generally considered harmless when it is cumulative of other evidence properly admitted. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Brazos Graphics, Inc. v. Arvin Indus., Inc.*, 586 S.W.2d 841, 841 (Tex.1979).

■ Plaintiffs also argue that witness Shellebarger, who was not designated, should not have testified in rebuttal. An emergency room physician, Dr. Steven Oscherwitz, had testified for plaintiffs that Richard was abusive and appeared to be intoxicated when Susan was brought to the hospital. The court allowed Richard to call Shellebarger to testify in rebuttal that

Richard did not appear to be intoxicated, but was "tearful" and "choked up."

Richard argues that he was surprised by Oscherwitz's testimony because in light of the interrogatory answers he could not anticipate the testimony. Plaintiffs respond that Oscherwitz had said precisely the same thing in his medical records and Richard therefore could not have been surprised.

■ We need not decide whether the record supports the trial court's implied finding of good cause because admission of Shellebarger's testimony, if erroneous, was harmless. Whether Richard was intoxicated was, to put it mildly, not salient evidence on the dispositive issues. His behavior at the hospital had nothing to do with whether there was a physician-patient relationship earlier that night (except possibly to suggest he was not acting as a doctor, because doctors do not ordinarily drink while on duty). And it had no relevance to his negligence earlier that evening. Evidence of intoxication, standing alone, does not prove negligence; there must be evidence of a negligent act or omission. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 798 (1951); *Missouri–Kansas–Texas R.R. v. Alvarez*, 703 S.W.2d 367, 369–70 (Tex.App.—Austin 1986, writ ref'd n.r.e.); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 32 at 178–79 (5th ed. 1984). In any event, two firemen and two paramedics testified they did not notice signs of intoxication when they observed Richard earlier; three relatives confirmed these observations. Admission of Shellebarger's testimony, if error, was harmless. *See Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d at 396; TEX.R.APP.P. 81(b)(1).

### III. JURY FINDING THAT SUSAN WAS NEGLIGENT.

Plaintiffs attack the legal and factual sufficiency of the evidence to support the jury's finding that Susan was negligent and that her negligence proximately caused her death. They also argue that Richard judicially admitted that Susan was not negligent.

Because we have overruled plaintiffs' other points, it is immaterial whether Susan was negligent: the jury rejected each theory of primary liability submitted against Richard, and we have found no reversible error concerning those findings. The jury refused to find that there was a physician-patient relationship, that Richard was negligent "as a husband," or that Richard was negligent in his efforts to resuscitate Susan. Because Richard was not primarily liable, it makes no difference whether Susan was contributorily negligent.

■ The alleged judicial admission was Richard's statement at his deposition that he was "not aware of anything" that Susan did to cause her own death. This was not a judicial admission because "a litigant's lack of personal knowledge of a fact does not conclusively negate the existence of the fact." *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 285 (Tex.App.—Amarillo 1990, writ denied).

### IV. DUTY OF CARE AS HUSBAND.

■ Plaintiffs challenge the court's refusal to submit two jury instructions that would have told the jury that the marital contract and the family relationship create a duty of ordinary care. Concerning duty as a husband, plaintiffs contend that the marriage vows amount to a contractual duty to exercise care for the spouse's wellbeing. Concerning duty as a family member, they argue that the family relationship is a special relationship—which is of course true—which imposes a duty of care toward the other members. To this end, plaintiffs requested these two instructions, which the court refused:

The marital contract between Susan Wascher and Richard L. Wascher, Jr. creates the relationship between them out of which may arise the reason for one to exercise ordinary care for the other.

A family relationship is a special relationship of trust, reliance and confidence out of which may arise the reason for one

family member to exercise ordinary care for another if a risk of harm, or of further harm, arises in the course of that relationship.

We agree that spouses and family members should exercise care toward each other, but it does not follow that they may sue each other for damages when they are dissatisfied with the care they receive.

The court's refusal to give these instructions was proper because they were incorrect for procedural and substantive reasons.

Over Richard's objection the court submitted a jury question asking whether Richard was negligent as a husband.[1] The jury refused to find Richard negligent as a husband. Even if the two instructions had correctly stated the substantive law, they did not belong in the charge because they were abstract statements of duty, and the jury question about negligence as a husband already rested on the premise that such a duty existed. The court's instructions to the jury should not contain abstract statements of the law about duty. *See Pittsburg Coca–Cola Bottling Works v. Ponder*, 443 S.W.2d 546, 550 (Tex.1969); *Dempsey v. Apache Shores Prop. Owners Ass'n, Inc.*, 737 S.W.2d 589, 594 (Tex.App.—Austin 1987, no writ); *Garcia v. Sky Climber, Inc.*, 470 S.W.2d 261, 264–65 (Tex.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *see also Acord v. General Motors Corp.*, 669 S.W.2d 111, 114–16 (Tex.1984). A proper broad-form jury question asks an ultimate issue and instructs the jury about the elements of the ground of recovery or defense that the jury must find before giving a "yes" answer to the issue. But the instructions should simply state the elements and not make abstract statements of duty.

The court's refusal to submit the instructions was also proper because the substantive law does not recognize a cause of action for the negligent failure of one spouse to take affirmative action to protect the other from self-injury. Our courts have abolished interspousal immunity for all causes of action. *See Price v. Price*, 732 S.W.2d 316, 319–20 (Tex.1987) (all causes of action); *Bounds v. Caudle*, 560 S.W.2d 925, 927 (Tex.1977) (intentional torts). But that says nothing about how far one spouse must go in intervening in the other's affairs to prevent injury. To what extent does the law impose a duty on one spouse to take affirmative action to prevent the other from injuring herself?

Plaintiffs argue that when a family member does not come to the rescue of another, or does not "serve the best interests of other members," a cause of action will lie. They seek to expand the admitted moral obligation that spouses and family members owe to each other into a legal obligation, enforceable in court and presumably to be funded by the family's homeowners' insurance policy. If there is no insurance coverage, presumably any damage recovery would simply involve an accounting transfer from one of the marital estates to another, depending upon the nature of the recovery. *See Graham v. Franco*, 488 S.W.2d 390 (Tex.1972) (recovery for personal injuries is separate property; recovery for medical expenses and lost earning capacity is community property); Tex.Fam.Code §§ 5.01, 5.22 (Vernon 1975).

Plaintiffs seek to establish that one spouse has a duty to intervene in the other's conduct and to rescue him or her from taking foolish action. Plaintiffs' live pleading sought recovery on three separate theories, and the court submitted jury questions on each theory: medical malpractice, or negligence as a doctor; negligence as a husband who failed to intervene in his wife's conduct; and negligent administration of emergency care.[2]

---

1. The court apparently submitted the question on the ground that whether the substantive law recognizes such a theory of recovery could be resolved (by rendering judgment on the verdict, or by disregarding the answer) after receiving the jury's answer if the jury answered yes.

2. Richard's liability as a doctor was submitted in a different cluster of issues, which the jury resolved in his favor by finding that on the occasion in question he and Susan did not have a physician-patient relationship. The jury also failed to find that he negligently administered emergency treatment or interfered with EMS

We deal here with negligence as a husband. Plaintiffs' live pleading initially stated that there was a "domestic squabble" and that Richard knew or should have known that Susan had consumed alcohol and had "left her residence with a container of muscle relaxer/tranquilizers." The pleading then sought recovery for the following acts and omissions of Richard *as a husband:* he "allowed her to consume alcoholic beverages in his presence and later enter their hot tub without warning her of danger" even though he "knew or should have known that [she] had a diminished capacity evidenced by slurred speech and difficulty maintaining alertness and/or consciousness"; as a husband he had a duty "to exercise ordinary care for her safety," a duty "to take affirmative action to aid and protect" her, which he violated by "allowing or encouraging [her] to drink alcoholic beverages" and by leaving her "alone and unsupervised in a hot tub after he knew or should have known that she ingested central nervous system depressant drugs and alcohol" and by failing to assist her out of the hot tub.

■ The law still recognizes the distinction between misfeasance and nonfeasance. Injury caused by affirmative misconduct is actionable, as when one spouse injures the other in an automobile accident, as in *Price v. Price,* 732 S.W.2d 316 (Tex.1987), or negligently transmits venereal disease, as in *Stafford v. Stafford,* 726 S.W.2d 14 (Tex. 1987). But the law has been much more reluctant to impose liability for failure to act (nonfeasance) than for acting carelessly (misfeasance). *See generally* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 56 (5th ed. 1984); 3 FOWLER V. HARPER ET AL., THE LAW OF TORTS § 18.6 (2d ed. 1986).

We decline to impose upon spouses and family members this kind of legally redressable affirmative duty to act, which would produce a right to bring an action for money damages in a court of law. "One test of the validity of a legal doctrine is the extent and scope with which it may be safely applied." *State ex rel. Edwards v. Reyna,* 160 Tex. 404, 333 S.W.2d 832, 838 (1960). We readily agree that spouses should take care of each other and that it would be a better world if more of them did so; but it does not follow that whenever one cares for the other imperfectly, the other may seek legal redress in court by filing a tort lawsuit for money damages. A line must be drawn somewhere, and the facts of this case fall well outside the line at which the law should prescribe a legally enforceable duty. If a husband physically prevented a wife from taking an extra drink, could she sue him for assault? If he physically prevented her from taking a bath, would she have an action for assault or false imprisonment? The law cannot govern all aspects of marital life, and it would exact a high cost in privacy invasion if it did. Neither spouse has a legal duty to intervene forcibly in the other's decision when and how much to drink, or whether or how to use a hot tub.

■ We hold that spouses and other family members have no legal right of action against each other arising from failure to take affirmative action to prevent injury. We note that this decision does not preclude liability for intentional or negligent infliction of injury by affirmative act; nor does it preclude liability arising from another relationship, such as that of employer-employee. *See Jilani v. Jilani,* 767 S.W.2d 671 (Tex.1988) (child's suit against parent for motor vehicle negligence); *Price v. Price,* 732 S.W.2d 316 (Tex.1987) (suit by one spouse against the other for automobile negligence); *Bounds v. Caudle,* 560 S.W.2d 925 (Tex.1977) (interspousal liability for intentional tort); *Felderhoff v. Felderhoff,* 473 S.W.2d 928 (Tex.1971) (father and son had employer-employee relationship).

\* \* \* \* \* \*

The record does not show reversible error. For the reasons stated, the judgment is affirmed.

---

personnel. Nothing in this opinion is meant to suggest that one family member may hold another liable for failing to skillfully administer emergency medical care, an issue that is not before us because of the jury's negative answer to that jury question.