No. 04-00-00340-CR

James GUEVARA,
Appellant 

v.

The STATE of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 99-CR-1818B
Honorable Sid L. Harle, Judge Presiding

En Banc Opinion on Remand
 
Opinion by:    Karen Angelini, Justice
 
Sitting:            Alma L. López, Chief Justice
Catherine Stone, Justice
Sarah B. Duncan, Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
 
Delivered and Filed:   December 7, 2005

REVERSED AND REMANDED

            A jury found James Guevara guilty as a party to the murder of his wife, Velia Guevara, and
sentenced him to life in prison and a $10,000 fine. On original submission, Guevara complained of
the sufficiency of the evidence, error in the jury charge, prosecutorial misconduct, and ineffective
assistance of counsel. In an opinion and judgment dated December 26, 2001, we affirmed the trial
court’s judgment. Guevara filed motions for rehearing and for reconsideration by the en banc court. 
On January 31, 2003, this court, in an en banc opinion, granted Guevara’s motions, withdrew our
December 26th opinion and judgment, and issued an opinion and judgment in which we reversed
the trial court’s judgment and remanded for a new trial. In our January 2003 opinion, a majority of
the en banc court held that the evidence was legally and factually sufficient to support the verdict. 
However, relying on this court’s opinion in Bagheri v. State, 87 S.W.3d 657 (Tex. App.—San
Antonio 2002), aff’d, 119 S.W.3d 755 (Tex. Crim. App. 2003) and on Texas Rule of Appellate
Procedure 44.2(b), we reversed and remanded for a new trial after concluding that the error contained
in the jury charge affected Guevara’s substantial rights.
            Both Guevara and the State petitioned the Court of Criminal Appeals for discretionary
review. Guevara challenged our holding that the evidence was legally sufficient to support the
verdict, and the State challenged our holding with respect to charge error. The Court of Criminal
Appeals determined the evidence was legally sufficient to support the verdict. See Guevara v. State,
152 S.W.3d 45, 52 (Tex. Crim. App. 2004). Although the Court of Criminal Appeals refused to
“address whether the inclusion of the legal-duty theory in the charge was error,” id. at 52, n.28, the
Court nevertheless determined this court applied an incorrect standard of review for charge error,
and remanded the cause to this court to conduct a harm analysis under Texas Code of Criminal
Procedure article 36.19.
 
 
STANDARD OF REVIEWArticle 36.19 provides that “[w]henever it appears by the record in any criminal action upon
appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded,
the judgment shall not be reversed unless the error appearing from the record was calculated to injure
the rights of defendant, or unless it appears from the record that the defendant has not had a fair and
impartial trial.” Tex. Code Crim. Proc. Ann. § 36.19 (Vernon 1981). When, as here, no objection
is made at trial to charge error, a defendant on appeal must show that the error was “so egregious and
created such harm that he ‘has not had a fair and impartial trial.’” Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984). Under the Almanza standard, the record must show that a defendant
has suffered actual, rather than merely theoretical, harm from jury charge error. Dickey v. State, 22
S.W.3d 490, 492 (Tex. Crim. App. 1999). Errors that result in egregious harm are those that affect
“the very basis of the case,” “deprive the defendant of a valuable right,” or “vitally affect a defensive
theory.’” Ngo v. State, No. PD-0504-04, 2005 WL 600353, at *6 (Tex. Crim. App. Mar. 16, 2005);
Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). On appeal, we assess the actual
degree of harm “in light of the entire jury charge, the state of the evidence, including the contested
issues and weight of probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.” Almanza, 686 S.W.2d at 171. 
CHARGE ERROR
            A trial court must fully instruct the jury on the law applicable to the case and apply that law
to the facts adduced at trial. Gray v. State, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004-05). “This is because “[t]he jury must be
instructed ‘under what circumstances they should convict, or under what circumstances they should
acquit’.” Gray, 152 S.W.3d at 127-28 (quoting Ex parte Chandler, 719 S.W.2d 602, 606 (Tex.
Crim. App. 1986)). “Jury charges which fail to apply the law to the facts adduced at trial are
erroneous.” Id. at 128.
            The jury charge here contained two theories under which the jury could find Guevara
criminally responsible for his wife’s murder: (1) that Guevara solicited, encouraged, directed, aided,
or attempted to aid another person in committing the offense (“the aiding theory”), or (2) that
Guevara did not make a reasonable effort to prevent the commission of the offense when he had a
legal duty to do so (“the legal duty theory”). The abstract portion of the charge informed the jury
that:
            A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is criminally
responsible, or both. Each party to an offense may be charged with commission of
the offense.
 
            Mere presence alone will not make a person a party to an offense. A person
is criminally responsible for an offense committed by the conduct of another if acting
with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense;
or having a legal duty to prevent commission of the offense and acting with intent to
promote or assist its commission, he fails to make a reasonable effort to prevent
commission of the offense. [Emphasis added.] 
 
The charge did not define “legal duty” for the jury. The charge did not set forth the elements of any
legal duty Guevara may have owed to Velia, nor did it instruct the jury on when such a duty attaches. 
See Kavali v. State, No. 05-01-00835-CR, 2002 WL 31445280, *4 (Tex. App.—Dallas Nov. 4, 2002, 
pet. ref’d) (not designated for publication) (instruction included when a party is criminally
responsible and quoted Family Code provision stating parent’s duty of “care, control and protection”
of a child), cert. denied, 540 U.S. 967 (2003).
            As a general rule, a person has no legal duty to protect another from the criminal acts of third
parties or to control the conduct of another. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). 
And, although spouses and family members may have a moral duty to exercise care toward one
another, it does not follow that a legal duty to prevent harm necessarily arises from the familial
relationship. See Ex parte Hall, 854 S.W.2d 656, 658 (Tex. 1993) (obligation that law imposes on
spouses to support one another is a legal duty arising out of the status of the parties); Rampel v.
Wascher, 845 S.W.2d 918, 925 (Tex. App.—San Antonio 1992, writ denied) (neither spouse has a
legal duty to intervene forcibly in the other’s decision of when and how much to drink, or whether
or how to use a hot tub); Brady v. State, 771 S.W.2d 734, 738 (Tex. App.—Fort Worth 1989, no
pet.) (appellant did not have a legal duty to prevent her husband’s possession of drugs); see also In
re Marriage of Beach, 97 S.W.3d 706, 708 (Tex. App.—Dallas 2003, no pet.) (characterizing
husband’s assertion that a spouse has a legal duty to reconcile as “utterly without merit”). 
            On the other hand, although a spouse generally does not have a legal duty to prevent harm
to the other spouse, “there may be circumstances under which one spouse could have a legal duty
to the other.” Guevara, 152 S.W.3d at 52, n.26. A spouse may owe a legal duty to the other if one
spouse was a law enforcement official or the legal guardian of the other. Id. However, as the Court
of Criminal Appeals noted, “there was no evidence presented in this case that [Guevara] and his wife
fell into any of these categories.” Id. Thus, instructing the jury on the legal duty theory was error
because Guevara did not have a legal duty to prevent the commission of the offense. See Medrano
v. State, 612 S.W.2d 576, 578 (Tex. Crim. App. 1981) (without a legal duty arising to prevent the
commission of an offense, there is no criminal conduct); see also Tex. Pen. Code Ann. § 6.01(c) 
(Vernon 2003) (an omission or failure to perform an act is not an offense unless there is a legal duty
to act). 
            The State argues that errors contained in the abstract portion of a charge do not generally
require reversal. We do not disagree with this proposition when the application paragraph correctly
instructs a jury. See Medina v. State, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). However, here,
the application paragraph told the jury it could convict if it found that Guevara, “either acting alone
or together with another party,” intentionally and knowingly caused Velia’s death “by shooting [her]
with a firearm” or by “commit[ting] an act clearly dangerous to human life, to-wit: by shooting at
or in the direction of Velia ..., thereby causing [her death.]” Faced with the phrase “either acting
alone or together with another party,” and nothing more, it is entirely plausible that the jury would
refer back to the charge’s definition of when a person is criminally responsible for an offense
committed by another person, a definition that included the legal duty theory.
            The State asserts this error is not egregious because the evidence is sufficient to support a
guilty verdict under the aiding theory. See Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.
1991). Guevara counters that the evidence in support of the aiding theory was not overwhelming. 
See Alamanza, 686 S.W2d at 173 (whether evidence of guilt is cogent and overwhelming is a factor
in considering egregious harm). At trial, no evidence was presented that Guevara had a legal duty
to his wife, and we have already held the evidence was factually sufficient to support the aiding
theory. However, the State’s argument ignores the nature of the insufficiency at issue here.
            When disjunctive theories are submitted to the jury and the jury renders a
general verdict of guilty, appeals based on evidentiary deficiencies must be treated
differently than those based on legal deficiencies. If the challenge is evidentiary, as
long as there was sufficient evidence to support one of the theories presented, then
the verdict should be affirmed. However, if the challenge is legal and any of the
theories was legally insufficient, then the verdict must be reversed. 
 
United States v. Tomblin, 46 F.3d 1369, 1385 (5th Cir. 1995) (quoting United States v. Garcia, 992
F.2d 409, 416 (2nd Cir. 1993)). The reason for the varying treatment is that “[j]urors are not
generally equipped to determine whether a particular theory of conviction submitted to them is
contrary to law – whether, for example, the action in question is protected by the Constitution, is
time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have
been left the option of relying upon a legally inadequate theory, there is no reason to think that their
own intelligence and expertise will save them from that error.” Griffin v. United States, 502 U.S.
46, 59 (1991); see also Tomblin, 46 F.3d at 1385. 
            A legally inadequate theory is a “mistake about the law, as opposed to a mistake concerning
the weight or factual import of the evidence.” See Griffin, 502 U.S. at 59. Such legal error occurs
when, “even if the government proved everything it possibly could prove, the defendant’s conduct
would not constitute the crime charged.” Tomblin, 46 F.3d at 1386. Under these circumstances, “the
proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict
is supportable on one ground, but not on another, and it is impossible to tell which ground the jury
selected.” Yates v. United States, 354 U.S. 298, 313 (1957); see also Griffin, 502 U.S. at 59 (legal
error is controlled by Yates). Here, because Guevara had no duty to prevent Velia’s death, his
conviction for her murder could have been based on a legally insufficient ground. Thus, even if the
evidence and instructions properly allowed the jury to convict under the aiding theory, we cannot
presume the jury based its verdict on the legally sufficient ground. See Tomblin, 46 F.3d at 1386. 
            The error was compounded by the State’s repeated urging of the jury to find Guevara guilty
as a party because he failed to protect Velia. During voir dire, the prosecutor explained the aiding
theory to the jury and provided various examples, such as a get-away driver in a bank robbery. A
venire-person then asked, “Are you also to consider a party to the crime if you didn’t do anything
to prevent it? If you were in a position where you didn’t know - - you weren’t part of the plan, but
you were - - you were with the group and could have prevented it at the time, like in a gang
situation?” The prosecutor answered,
            That would depend on the circumstance. Usually in the law you have to have
some type of affirmative duty to assist somebody before you can be charged with a
crime of omission. But there are also some circumstances where what you are saying
might be useful as far as determining whether someone aided or assisted.
 
            Let’s suppose your job is you are a bodyguard, all right, and if you are a
bodyguard, what is your job? Your job is to keep people from coming after the
person that you are protecting. But if you as a bodyguard, with the intent to aid or
assist in the commission of the offense, step away and let those people go forward
and harm that person, then a jury could convict you as being a party to the offense 
because you did something and you aided or attempted to aid in doing that.
 
            It’s a different story than if you just happened to know about a crime and
don’t do anything about it, all right. But sometimes in a situation not doing - - it
would be a rare situation, but making yourself where you no longer were able to
protect that person, if it aids, if it assists and you are doing it with the intent to
promote. All right? I think that is the important thing to think about. . . . Does that
make sense?
 
. . .
 
            Yeah. We are not talking about the situations where you don’t know what is
going on and we are not talking about the situation where you do know what’s going
on but you don’t want it to happen. Not the person who is just along for the ride and
doesn’t want it to happen.
 
            We are talking about a situation where somebody is assisting or encouraging
the act even if it is by something they don’t do. Like I said, you can be a bodyguard
who steps aside. It can be a very minor act. You can procure the bullets for the gun. 
You could basically do just about anything as long as that one act, or more than one
act, aids, assists, attempts to aid, encourages, solicits the act and you do so with the
intent to promote or assist. . . . .
            The discussion during voir dire and the instruction on legal duty set the stage for the State’s
closing argument, during which the prosecutor again focused on Guevara’s absence from his home
on the day Velia was shot:
            This man sat there as Minnie Salinas was identified as his wife’s killer. The
law is if with the intent to promote or assist in the commission of the offense, you
solicit, encourage, direct, aid, or attempt to aid in any way, shape or form, no matter
how small it is, you are a party to the offense of murder. And this man did.
 
            We talked about the fact it can be very small. It can even sometimes be the
situation of a bodyguard stepping out of the way and that is aiding or attempting to
aid in the commission of the offense. And we know that this Defendant did many
things. He took Minnie Salinas to the shooting range, watched and helped her fire
a .9 millimeter weapon. . . . .
 
. . .
 
            We know the Defendant, perhaps the most horrible thing he did was arrange
to be away at the time of the murder, taking one little bit of protection away, because
we know Minnie Salinas would never go into an apartment and kill Velia Guevara
with him actually there.
. . .
 
            He got rid of the only handgun, the only handgun that was in the apartment,
that no matter what your feelings on handguns you might believe that was some
protection to her and he got rid of it. What does he say he did with it? He says, “I
gave it to Minnie Salinas because she had lent - - she needed the revolver because she 
had loaned her .25 caliber gun to her friend Tina,” Tina Zimmerman, the same
woman who testified in front of you and said, “I never had Minnie Salinas’
handgun.” There was no reason for him to give the gun to Minnie Salinas, his
current wife.
 
. . . 
 
            And then the most serious thing, he diverts all the police attention away from
Minnie Salinas. He lies to the police. He says they are happy together, he and his
wife.
 
            Any of those things are sufficient to find this Defendant guilty of murder,
aiding and assisting in the murder. You can look at things before, during and after
the murder to determine guilt. . . . .
            The State argues that, in each instance, the prosecutor merely used hypotheticals to illustrate
the concept of an accomplice affirmatively aiding and assisting the primary actor. We disagree. The
State began its case by placing before the jury the image of a man who steps aside and allows harm
to come to another individual. The State closed with the same image, emphasizing Guevara arranged
to be away from home at the time of his wife’s murder, “taking one little bit of protection away,” and
getting rid of a gun that might have provided Velia with “some protection.” 
            Guevara’s absence from his home the day Velia was shot was a theme central to the State’s
presentation of its case. His absence, coupled with a jury charge that authorized the jury to convict
him of the offense of not making a reasonable effort to prevent Velia’s death, although he had no
legal duty to do so, created such harm that Guevara did not receive a fair and impartial trial.
CONCLUSION
            After examining the instructions and the proceedings as a whole, we conclude egregious
harm resulted from the erroneous jury instruction. We reverse the trial court’s judgment and remand
the cause to the trial court for a new trial.
 
Karen Angelini, Justice
PUBLISH