Pedro P. HANI, M.D., Appellant

v.

Isabella JIMENEZ, Individually, and as Representative of the Estate of Refugio P. Jimenez, Deceased, Appellee.

No. 05–07–01354–CV.

Court of Appeals of Texas, Dallas.

Aug. 13, 2008.

R. Brent Cooper, Diana L. Faust, Cooper & Scully, P.C., Vernon L. Krueger, Linda Stimmel, Stewart & Stimmel, L.L.P., Dallas, for appellant.

Brian P. Lauten, The Lauten Firm, P.C., Dallas, for appellee.

Before Justices MORRIS, WHITTINGTON and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

This is a medical malpractice case. Pedro P. Hani, M.D. ("Dr. Hani") appeals from a jury's award of damages to Isabella Jimenez ("Mrs. Jimenez") arising from the death of her forty-five-year-old husband, Refugio. Dr. Hani raises three issues. First, he contends the trial court abused its discretion by not submitting issues on Mrs. Jimenez's contributory negligence. In his second and third issues, Dr. Hani argues the evidence is factually insufficient to support the jury's findings that (a) he was sixty-five percent responsible for Refugio Jimenez's death while another physician was only twenty-five percent responsible; and (b) Mrs. Jimenez's compensatory damages for the death of her husband of twenty-five years totaled $885,264. Dr. Hani requests reversal and remand for his first two issues. To remedy the error raised in his third issue, he seeks reversal and remand or "alternatively, suggest[ion of] a significant remittitur of an excessive damages award." Finding no reversible error, we affirm the trial court's judgment.

## Background

On September 12, 2001, Mrs. Jimenez took her husband, a long-time diabetic, to the emergency room at St. Paul Medical Center ("St. Paul's") for the third time in five days. Refugio was suffering from a severe sore throat. Physicians at St. Paul's determined his condition was serious and required hospitalization. Because of medical insurance issues, a doctor at St. Paul's contacted Dr. Hani and he agreed to Refugio's transfer to Medical City Hospital ("Medical City"). Upon his arrival, Refugio was admitted by Dr. Hani who also agreed to act as his attending physician. Dr. Hani is an internist and board certified in both pulmonary and critical care medicine. At Medical City, an attending physician is required "to follow the patient during the entire hospital course" and remains responsible for the patient's care.

Dr. Hani examined Refugio and concluded the patient had a cyst or abscess in his larynx. He prescribed an antibiotic and pain medication. As the internist, Dr. Hani took responsibility for treating Refugio's infection and followed his diabetes and glucose levels throughout his hospitalization.[1] He also consulted with Dr. Timothy Trone, a head and neck surgeon, who also examined Refugio. Dr. Trone started Refugio on a course of Decadron, a steroid both doctors knew would increase the patient's glucose levels. The next day, Dr. Trone operated and drained puss from an abscess in Refugio's laryngocele.[2]

For a few days, Refugio's condition improved because he was placed on a powerful antibiotic and Dr. Trone had drained the abscess. He was discharged after five days on September 17. Nurse's notes for September 16 and 17, however, document that Refugio's glucose levels, white blood

---

1. Diabetes places people at an increased risk for infection and generally makes infection more difficult to treat.

2. The laryngocele is an air sac in the throat connected to the larynx.

cell count and heart rate had significantly increased[3] and his severe pain had returned.[4] Dr. Hani never read any of the nurses' notes before sending Refugio home and admitted that, if he had reviewed the nurses' observations, he "would have reassessed the patient ... and thought twice before allowing him to go."

The discharge document signed by Mrs. Jimenez states that Refugio would see Dr. Trone on September 24 and instructed the patient to "call MD for ↑ or unrelieved pain, fever > 101°, or bleeding." Dr. Hani, a native of Venezuela, testified he is fluent in Spanish and communicated daily with Refugio and Mrs. Jimenez in Spanish.

Following his discharge, Refugio's symptoms returned. The morning after taking her husband home, Mrs. Jimenez had his prescriptions filled. She thought he was taking his medicine. She also thought the prescribed medicine was supposed to help him but he continued to deteriorate. On September 23, Refugio passed out as Mrs. Jimenez was handing him a glass of water. She called 9–1–1. Refugio was taken by paramedics to the emergency room at RHD Medical Memorial Medical Center where he died within minutes of his arrival. After an autopsy,[5] the Dallas County Medical Examiner concluded he "died as a result of pneumonia with probable sepsis."[6] "Other significant and contributory

factors were an infected laryngocele and diabetes mellitus."

Mrs Jimenez filed suit against Dr. Trone, his professional association and Dr. Hani. Trone and his professional association settled her claims against them for $250,000 ("Trone Settlement"). Her case against Dr. Hani proceeded to trial. Before trial, Dr. Hani filed several documents with the court, including a twenty-nine page proposed charge with instructions and questions identifying Mrs. Jimenez as a person whose negligence could be a proximate cause of Refugio's death. At the charge conference, however, Dr. Hani did not tender or even refer to his proposed jury instructions or questions. Instead, when the judge stated she would entertain objections to the charge, his attorney stated:

... Defendant objects to the issue of— the issue or the failure to include definitions for negligence, ordinary care and proximate cause for Isabella Jimenez. Defendant would object to question number one as worded, to the extent that it fails to include Isabella Jimenez as a party. Defendant would object to question number two for the reason that the—the deletion of Isabella Jimenez....

The trial court overruled Dr. Hani's objection and submitted four questions to the jury:

3.  Nurses' notes show that on the day of discharge, Refugio's glucose levels and heart rate were higher than when he was admitted and his white blood count had increased from 10,000 at the time of surgery to 16,600.

4.  Nurses' notes document that Refugio did not request or receive pain medicine on the fourteenth or fifteenth. However, on the sixteenth, he was placed back on Toradol, a strong painkiller dispensed intravenously. Nurses continued to administer Toradol on the seventeenth, the day Refugio was discharged from Medical City.

5.  An autopsy was performed because Refugio died shortly after he arrived at RHD and Dr. Hani, who was contacted as the treating physician and asked to sign the death certificate, stated he felt uncomfortable and refused to sign the document.

6.  Pneumonia is an infection of the lungs and sepsis is an infection in the bloodstream. Dr. Hani described sepsis as "a reaction of the body to something, typically an infection."

1. Did the negligence, if any, of [Dr. Hani, Dr. Trone or Refugio] proximately cause the death of Refugio Jimenez?

2. What percentage of the negligence that caused the injury do you find attributable to each of those found by you, in your answer to Question No. 1, to have been negligent?

3. What sum of money, if paid now in cash, would fairly and reasonably compensate Isabella Jimenez for her damages [for pecuniary loss, loss of companionship and society, and mental anguish], if any, resulting from the death of Refugio Jimenez?

4. What sum of money would have fairly and reasonably compensated Refugio Jimenez for [pain and mental anguish, and funeral and burial expenses]?

The jury found Dr. Hani, Dr. Trone and Refugio each negligent and attributed responsibility among the three tortfeasors:

Pedro P. Hani, M.D.        65%;
Timothy H. Trone, M.D.    25%; and
Refugio Jimenez            10%.

The jury then considered Question No. 3 as to compensation for Mrs. Jimenez with an instruction that its answer be the sum of pecuniary loss, loss of companionship and society, and mental anguish. At the charge conference, Dr. Hani did not request any segregation of the elements of Mrs. Jimenez's total damages. The jury found Mrs. Jimenez had sustained total damages of $545,582 in the past and would probably sustain $339,682 of damages in the future. Dr. Hani obtained a ten percent reduction for the responsibility the jury attributed to Refugio and a dollar for dollar credit for the Trone Settlement. He now appeals on three issues.

## Discussion

### A. The Trial Court's Refusal to Include Instructions and Questions on Mrs. Jimenez's Alleged Contributory Negligence

In his first issue, Dr. Hani contends the trial court abused its discretion by failing to submit the contributory negligence of Isabella Jimenez in jury question no. 1 on proximate cause and jury question no. 2 relating to the percentage of responsibility. Dr. Hani argues that Mrs. Jimenez should have been included as a potential tortfeasor—separate and apart from her husband—because she signed the hospital discharge form. There is no evidence that by signing the form, she was assuming a specific duty to care for Refugio. At the same time, Dr. Hani testified he communicated with Refugio in Spanish and "absolutely" felt and believed Refugio was understanding him and could communicate with him.

█ Texas Rule of Civil Procedure 278 requires the trial court to submit questions, definitions and instructions to the jury that are necessary to enable the jury to render a verdict. Tex.R. Civ. P. 278. "A reviewing court may reverse and remand for a new trial based on an alleged error in a jury charge only if such error 'was reasonably calculated and probably did cause rendition of an improper judgment.'" *Providence Health Center v. Dowell*, 262 S.W.3d 324, 331 (Tex.2008)(Wainwright, J., concurring) (quoting *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986)); *see also Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex.2006)(citing Tex.R.App. P. 61.1(a) & 44.1(a)); *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 843 (Tex.2005); *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex.1995).

As a general rule, a person has no legal duty to control the conduct of another. *Providence Health Center,* 262 S.W.3d at 331 (holding, even though mother was a nurse, she had no legal duty to prevent her 21–year–old son's suicide); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). And, although spouses and family members may have a moral duty to exercise care toward one another, a legal duty to prevent harm does not arise from the familial relationship. *Rampel v. Wascher,* 845 S.W.2d 918, 925 (Tex.App.-San Antonio 1992, writ denied) (a physician husband who prescribed drugs his wife used to kill herself had no legal duty to affirmatively prevent injury to his wife). *See also, Providence Health Center,* 262 S.W.3d at 331 ("A lack of action on the part of the [parents] could not constitute contributory negligence in the absence of some legal duty.")(citing *Thapar v. Zezulka,* 994 S.W.2d 635, 637–39 (Tex.1999)).

Dr. Hani's theory that one spouse has an affirmative duty to prevent the other spouse from harming himself does not comport with Texas law. Mrs. Jimenez had no independent legal duty to her husband, arising from her status as his wife, to prevent Refugio's death—which resulted from natural causes. *Rampel,* 845 S.W.2d at 918. Since she did not have a legal duty to prevent harm, her alleged failure to take him to an emergency room before September 23 could not constitute legal negligence. So, any inclusion of instructions and questions on Mrs. Jimenez's alleged contributory negligence would have been improper. Instead of being necessary for the jury to render a proper verdict, inclusion of Dr. Hani's proposed instructions and questions would have been error. We overrule Dr. Hani's first issue.

**B.** *Dr. Hani's Factual Sufficiency Issues*

When an appellant challenges the factual sufficiency of evidence supporting an adverse finding on which he did not have the burden of proof, he must demonstrate there is insufficient evidence to support the adverse finding. *Pulley v. Milberger,* 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied). In his second and third issues, Dr. Hani argues there is factually insufficient evidence to support (a) the jury's apportionment of responsibility between himself and Dr. Trone, and (b) the jury's award of compensatory damages to Mrs. Jimenez.

When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998); *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam). A verdict may only be set aside if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Maritime Overseas Corp.,* 971 S.W.2d at 407; *see also Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). In conducting our review of the factual sufficiency of the evidence, we are mindful that the jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex.2005) We may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas,* 971 S.W.2d at 407.

With respect to apportionment of responsibility, the jury found Dr. Hani 65% responsible whereas Dr. Trone was

found 25% responsible. Dr. Hani testified he examined Refugio daily and spoke with the couple daily. He approved Refugio for discharge on September 17 without consulting any nurses' notes in Refugio's chart. He could not remember when he saw Refugio on that day because he failed to document the time. Even though he was the attending physician, Dr. Hani contends Dr. Trone was in charge of Refugio's care "in regard to the upper airway" and he only approved discharge "upon approval from Dr. Trone." In contrast, Dr. Trone thought they were "co-managing" the patient.

Dr. Hani admitted he was more qualified than Dr. Trone to treat the respiratory infection because he is a pulmonary care specialist. Neither Dr. Hani nor his medical expert had any criticism of the care Dr. Trone provided. Mrs. Jimenez's medical expert, however, concluded Dr. Hani had breached his standard of care by ignoring Refugio's elevated glucose levels, not reading the nurses' notes, and failing to order tests before Refugio was released that the expert believed would have indicated Refugio had pneumonia. Given the record, we conclude the jury's finding that Dr. Hani's negligence was 65% responsible for Refugio's death is supported by factually sufficient evidence. We overrule Dr. Hani's second issue.

■ In his third issue, Dr. Hani complains the jury's award of more than $ 885,000 in damages to Mrs. Jimenez was not supported by factually sufficient evidence. As a threshold issue, we examine whether he waived error because he did not object to the breadth of the damages question:

> Question No. 3. What sum of money, if paid now in cash, would fairly and reasonably compensate Isabella Jimenez for her damages, if any, resulting from the death of Refugio Jimenez?

> Consider the [following] elements of damages ... a. [p]ecuniary loss[,] ... b. [l]oss of companionship and society[, and] ... c. mental anguish.

At the charge conference, the only objection Dr. Hani's counsel made as to jury question no. 3 was:

> Defendants would object to the submission of question number three, to the extent that there is a claim for pecuniary loss. Defendant would object that there is no evidence to substantiate the submission of monetary loss or value resulting from the death of Refugio Jimenez.

■ Under Texas Rules of Civil Procedure 272 and 274, Dr. Hani was required to timely and specifically object and make the trial court aware of his complaint in order to preserve error for appeal. *Equistar Chem., L.P. v. Dresser–Rand Co.,* 240 S.W.3d 864, 868 (Tex.2007) (citing Tex.R. Civ. P. 272 & 274). Dr. Hani's objection only attacks the pecuniary loss element of the broad damages question on no evidence grounds. He did not argue the question itself presents an improper amalgamation of damages because it allows the jury to find pecuniary loss and non-economic damages in a single answer. He did not request any change to require the jury to specify the amount of damages for each element. *Harris County v. Smith,* 96 S.W.3d 230, 232–33 (Tex.2002) (defendant required to make timely and specific objection to broad-form damages question).

With respect to pecuniary loss, Dr. Hani contends that because Refugio was unemployed immediately prior to his death, Mrs. Jimenez suffered little or no pecuni-

ary loss. But, testimony and Refugio's employment records prove that from July 1997 to January 26, 2001, he worked at Oliver Rubber Company making more than $8.50 per hour when he was laid off because the Texas plant closed. While looking for work, from the time he was laid off until he got sick, he cleaned offices after hours for four hours every night for cash. In 1999, Refugio earned $26,550.52. The jury could have concluded Refugio would earn at least that amount per year and would have worked until he was sixty-five, which results in past and future lost wages of at least $531,010.40.

In addition, there is sufficient evidence to support the non-economic damages. Both Mrs. Jimenez and their son, Juan, testified that Mrs. Jimenez and her husband had enjoyed a happy marriage for twenty-five years. They raised their children and spent most of their time together. Between his death in September 2001 and trial in April 2007, Mrs. Jimenez had not dated any men, was lonely, and did not expect to ever enter into another intimate relationship. Although Dr. Hani asks us to question the value the jury gave to the quality of the Jimenez marriage, we decline to do so. The jury listened to the testimony of the wife and son and is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819.

As a general rule, the jury has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex.App.-Austin 1997, pet. denied). The jury's findings will not be disregarded merely because its reasoning in arriving at its figures may be un-

clear. *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex.App.-Austin 1993, writ denied). The fact that there is nothing in the record to evidence how the jury arrived at a specific amount is not necessarily fatal to the verdict. *Mayberry*, 948 S.W.2d at 317. Instead, when the evidence supports a range of awards, an award of damages within that range may be an appropriate exercise of the jury's discretion. *Id.* We conclude the damages award found by the jury of past damages of $545,582.00 and $339,682.00 as future damages is within the range of evidence presented at trial and we overrule Dr. Hani's third issue.

## Conclusion

Finding no reversible error, we affirm the trial court's judgment.