

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00171-CV

---

**MONICA MCCORMICK, AS INDEPENDENT EXECUTOR FOR THE ESTATE OF SHERRY BISHOP ALLEN, DECEASED; MOLLY FOX; AND MEGAN MARSHBURN, APPELLANTS**

**V.**

**HOWARD E. ALLEN, APPELLEE**

---

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 83355C, Honorable Ana Estevez, Presiding

---

January 21, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellants Monica McCormick, as independent executor for the estate of Sherry Bishop Allen, deceased; Molly Fox; and Megan Marshburn appeal the trial court's order granting summary judgment in favor of appellee Howard E. Allen. We affirm the judgment of the trial court.

## BACKGROUND

Sherry and Howard met in 2020 and began a dating relationship. By late 2020, Sherry moved in with Howard. They married in late August 2021. Approximately a week after they married, the couple attended a Labor Day party at the home of friends, Chris and Dusti Sugar. The party lasted most of the afternoon and into the evening. Sherry drank a considerable amount of alcohol and became intoxicated. By around 8:30 p.m., the party had dwindled to Sherry, Howard, and Chris and Dusti Sugar. About 30 minutes later, Sherry asked Dusti if she wanted to race her in the pool. Dusti declined. Sherry began swimming laps in the pool and Howard began timing her laps with his watch and calling out her time. Sherry never completed her third timed lap because she drowned. At the hospital, Sherry was determined to have a blood-alcohol concentration of 0.21%. After spending five nights in intensive care, Sherry passed away. Her cause of death was identified as "acute respiratory distress syndrome due to drowning."

Appellants, the independent executor of Sherry's estate and Sherry's daughters, filed suit against Howard asserting claims for wrongful death, mental anguish, and negligence. Howard filed a motion for no-evidence and traditional summary judgment. Appellants filed a response to which they attached evidence. The trial court granted Howard's motion without specifying the grounds relied upon. Appellants then timely filed the instant appeal.

Appellants present one issue by their appeal. By that issue, they contend that the trial court erred in granting summary judgment because the evidence raised genuine issues of material fact on each of the required elements of Appellants' claims.

2

We employ a de novo review of a trial court's ruling on a motion for summary judgment. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In our review, we consider as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is appropriate if the movant establishes that there is no genuine issue of material fact and judgment should be granted as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005).

To prevail on a defensive no-evidence motion for summary judgment, the movant must prove that there is no evidence of at least one essential element of each of the plaintiff's causes of action. *Pena v. Harp Holdings, LLC*, No. 07-20-00131-CV, 2021 Tex. App. LEXIS 7685, at *8–9 (Tex. App.—Amarillo Sept. 16, 2021, no pet.) (mem. op.). If the party against whom the summary judgment was rendered brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment motion cannot properly be granted. *Id*. at *9. More than a scintilla of evidence exists when the evidence rises to the level that would enable reasonable and fair-minded people to reach different conclusions. *Kimber v. Sideris*, 8 S.W.3d 672, 676 (Tex. App.—Amarillo 1999, no pet.). However, evidence does not create an issue of material fact if it is so weak as to do no more than create a mere surmise or suspicion of the existence of the fact. *Kia Motor Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). A movant for traditional summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

Because the order granting Howard's summary judgment did not specify the grounds on which the trial court relied, we must affirm the judgment if any of the grounds asserted are meritorious. *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 346 (Tex. 2025) (per curiam).

## ANALYSIS

A cause of action for negligence has three elements: (1) a legal duty, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff. *Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The plaintiff must establish that the defendant owed a duty to the plaintiff and that he violated that duty to establish liability in tort. *Id*. The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id*. If no duty exists, there is no liability for negligence. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

As an initial matter, Texas law does not recognize a legally redressable spousal duty to act. *Hani v. Jimenez*, 264 S.W.3d 881, 886 (Tex. App.—Dallas 2008, pet. denied); *Rampel v. Wascher*, 845 S.W.2d 918, 925 (Tex. App.—San Antonio 1992, writ denied); *see Cox v. Bain*, No. 07-96-00004-CV, 1996 Tex. App. LEXIS 2433, at *13 (Tex. App.—Amarillo June 6, 1996, no writ) ("family members do not have a cause of action against one another for failure to take affirmative action to *prevent* injury (nonfeasance) as contrasted to possible liability for the intentional or negligent (misfeasance) infliction of injury by an affirmative act"). Appellants do not contend that Howard owed Sherry a duty due to their relationship as spouses.

4

Rather, Appellants contend that Howard owed Sherry a legal duty not to create a dangerous situation. *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 639 (Tex. 2023) ("[I]f a party negligently creates a dangerous situation[,] it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby."). They argue that Howard created a dangerous situation by "encouraging [his] obviously inebriated spouse to swim timed underwater laps in a pool . . . ." However, Appellants go further to argue that Howard's "absolute control over Sherry" made his encouragement the functional equivalent of a directive.

The record reflects that the people who remained at the party at the time Sherry drowned each indicated that it was Sherry's idea to swim laps and that she encouraged others to join her. While there is some evidence that would indicate that doing so would be out of character for Sherry, there is no direct record evidence that Howard ever encouraged Sherry to swim laps.[1] Appellants contend that because the eyewitnesses' accounts of the events leading to the drowning have changed, it is reasonable to infer "that Howard did something intentional to harm Sherry." While a jury would be free to disbelieve the testimony of the eyewitnesses, *see City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005), this disbelief does not then constitute affirmative evidence of another version of events. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) ("some suspicion linked to other suspicion produces only more suspicion, which is not the same as evidence").

---

[1] The only basis for suggesting that Howard encouraged this behavior is evidence that Howard began timing Sherry's laps and calling out her times.

Appellants contend that the summary judgment evidence allows for a reasonable inference that Howard totally controlled Sherry's actions and behaviors. Upon that inference, they then stack another inference that Howard insisted that Sherry swim timed underwater laps knowing that she was intoxicated. This Court has held that, "[a] vital fact, essential to establishing legal elements for recovery may not be established by 'piling inference upon inference.'" *Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 197 (Tex. App.—Amarillo 1999, pet. denied).

The basis for Howard owing Sherry a duty, as Appellants contend, depends on the evidence giving rise to a reasonable inference that Howard controlled Sherry's behavior and actions to such an extent that his encouragement was the equivalent of a command.[2] Appellants point to the following evidence of Howard's control over Sherry: pictures Sherry took of injuries she sustained, Sherry getting her nipples and vagina pierced at Howard's request, Sherry deleting her Facebook account, Howard and Sherry attending premarriage counseling, Howard pressuring Sherry to convert to Catholicism, Sherry being financially dependent on Howard, Sherry's family not being invited to the wedding, Sherry telling a friend that the couple was having significant problems early in the marriage and that she was considering getting the marriage annulled, and Howard sending Sherry a series of hateful texts two days before she drowned.

When reviewing the evidence in the light most favorable to Appellants, as the nonmovants, we conclude that the evidence does not support a reasonable inference that Howard controlled Sherry's actions and behaviors to an extent that it would be reasonable to infer that any encouragement he gave her to swim was the equivalent of an order.

---

[2] Appellants contend that evidence of Howard's control over Sherry "is relevant to a key, disputed fact: whether Sherry was acting voluntarily in swimming underwater laps."

6

There is no evidence that Sherry ever ascribed the photographed injuries to Howard nor did Sherry ever tell anyone that Howard was physically violent. There is no evidence that Howard did anything more than request that Sherry get piercings. The evidence regarding Sherry deleting her Facebook account simply notes that she chose to delete her account because Howard would become jealous of her pictures. Evidence of premarriage counseling and pressure to change religious beliefs is not unusual in newer relationships and not evidence that Howard controlled Sherry's behavior. The evidence shows that Howard provided Sherry money when she needed it and there is no evidence that Howard attached conditions to his financial assistance. The wedding of Howard and Sherry appears to have been an intimate event held in Howard's backyard and there is no evidence that Howard controlled the nature of the ceremony or who attended. Sherry's statements that the marriage was troubled to the extent that an annulment was possible did not include any claim that Howard was controlling Sherry. In fact, that Sherry felt comfortable discussing this possibility with a friend implies that Sherry did not feel controlled by Howard. While the texts Howard sent Sherry are certainly hateful, they do not include any indications that Howard was controlling or attempting to control Sherry's behavior. Finally, there is no evidence that Howard prevented Sherry from doing any of the things she would have ordinarily done, such as working and socializing. It is clear that, even when considered cumulatively, we cannot conclude that the summary judgment record gives rise to a reasonable inference that Howard maintained such control over Sherry that it is then reasonable to infer that she swam underwater laps while she was intoxicated because Howard commanded her to do so.

7

Our review of the summary judgment evidence shows that there is no evidence that Howard controlled Sherry's behavior to such an extent that it is reasonable to infer that he compelled her to swim timed underwater laps while intoxicated, thereby creating the dangerous situation leading to Sherry's death. Consequently, we conclude that the summary judgment record includes no evidence giving rise to a legally redressable duty requiring Howard to prevent injury to Sherry. *See United Rentals*, 668 S.W.3d at 639 (for injury to be legally redressable, defendant must have negligently created dangerous situation causing the injury).

## CONCLUSION

Having determined that there is no summary judgment evidence that Howard owed a duty to Sherry to prevent her from drowning, we affirm the trial court's summary judgment.

Judy C. Parker
Chief Justice