Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00729-CR

Juan Guzman **ZUNIGA** (aka Robert Guzman),
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-5239
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:       Alma L. López, Chief Justice
               Catherine Stone, Justice
               Sandee Bryan Marion, Justice

Delivered and Filed:  September 10, 2008

AFFIRMED

A jury found defendant, Juan Guzman Zuniga, guilty of sexual assault and the court assessed punishment at thirty years' confinement and a fine of $1,500.  On appeal, defendant complains: (1) the evidence was legally and factually insufficient to support the conviction, (2) the trial court erred when it refused to allow him to testify to a conversation he had with the complainant prior to the offense, and (3) the trial court erred when it permitted a police officer to testify that the complainant seemed truthful and believable.  We affirm.

**LEGAL AND FACTUAL SUFFICIENCY**

In his first and second issues, defendant asserts the evidence is both legally and factually insufficient to support his conviction for sexual assault. Specifically, he contends the State produced no evidence a sexual assault occurred because the sexual relations between him and the complainant were consensual. We review the sufficiency of the evidence under the appropriate standards of review. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (legal sufficiency); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (same); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (factual sufficiency).

The complainant in this case, C.M., was a seventeen-year-old female. On April 23, 2006, she and her father argued several times throughout the day and her father kicked her out of the house. C.M. spent several hours with a neighbor, William Shandore, before she attempted to return home. When her father refused to let her in, she spoke to defendant at a neighborhood store. C.M. testified defendant had previously told her she could stay with him as long as it was necessary. She testified she felt comfortable around defendant because he had never asked her on a date, had never tried to kiss her, and had never otherwise acted as if he were attracted to her. She said she was not attracted to him.

On the evening C.M. accepted defendant's offer to stay in his apartment, defendant gave her alcohol while she cried and recounted her problems with her father. C.M. testified that when she grew tired, defendant told her to sleep in his bed and that he would sleep on the chair. She said she awoke when she felt defendant pulling off her pants and underwear. C.M. testified she attempted to prevent him from removing her garments, but that he succeeded and then held her down by her wrists while he forced himself into her. After about three minutes of forcible penetration, C.M. was able to get up, put on her pants, and leave the apartment. Shandore, the neighbor with whom she

spent the earlier part of the day, testified C.M. arrived at his door in a disheveled state, with a look of "shock" on her face, and told him she had been raped. C.M. used Shandore's telephone to call the police. Shandore then walked with C.M. to her father's home. C.M.'s father let her in once he learned she had been raped, and Shandore returned to his apartment.

A police officer testified C.M. was hysterical when he met her at her father's home. C.M. described defendant and where he lived, and the police were directed to defendant's apartment, where they interviewed him. Defendant twice denied having sexual contact with C.M. However, when a detective explained a DNA test would reveal whether the two had sexual contact, defendant told the officer he performed only oral sex on her. C.M. and defendant were transported separately to a hospital where medical evaluations and DNA tests were conducted in the early hours of April 24, 2006. The examinations revealed no evidence of force or trauma on C.M., nor was semen discovered on her. However, C.M.'s DNA was found on defendant's penis.

On appeal, defendant asserts there is "no circumstantial evidence, direct evidence, or medical evidence to support the jury's verdict." We disagree. First, the uncorroborated testimony of the victim of a sexual offense will support a conviction for sexual assault if the victim reports the offense to anyone other than the defendant within one year of the date the offense is alleged to have taken place. TEX. CODE CRIM. PROC. art. 38.07(a) (Vernon 2005); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd). Here, C.M. reported the assault to a neighbor, her father, and the police almost immediately after defendant assaulted her. In addition to C.M.'s testimony, witnesses who saw and heard C.M. after the sexual assault testified to her emotional condition. Also, witnesses who interviewed defendant testified he offered contradictory statements regarding what occurred that night in his apartment. Although C.M. alleged defendant held her

down by her wrists and forcefully penetrated her, a medical examination revealed no evidence of force. However, a sexual assault nurse testified that marks from forceful sexual assaults are not always found. Finally, although defendant testified C.M. consented to having sex with him, it was the jury's job to judge the credibility of the witnesses and the weight to be given to their testimony. *See Jones v. State*, 944 S.W.2d 642, 647-49 (Tex. Crim. App. 1996). Having reviewed the record, we conclude the evidence is legally and factually sufficient to sustain defendant's conviction.

## HEARSAY EXCEPTION

In his third issue, defendant complains the trial court erred when it sustained the State's hearsay objection, thereby precluding him from offering statements to indicate C.M.'s state of mind prior to the assault. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard to determine whether the decision was outside the zone of reasonable disagreement. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*.

At trial, defendant asserted C.M. consented to have sex with him. To prove his defensive theory, he testified he had seen and spoken to C.M. several times during the day, the latest when she walked up to him, near his apartment, at around 8:00 p.m. When asked if he had a conversation with C.M., defendant responded: "Yes. She said that she needed a place to stay." Defense counsel then asked:

Q.      Was there anything different about her, anything that was as compared to before?

A.      Yes. Yes. She had a little small - - like a netted purse and she had some stuff in there and she told me that she needed a place to stay at.

Q.     Okay.  And why?

A.     Because they had had an argument.

When the State objected on hearsay grounds, defense counsel explained "this is all leading up to the issue in this case.  The issue of consent leading up to the state of mind of her [sic] and the conversations the two of them had leading up to the incident that occurred."  On appeal, defendant asserts "defense counsel wanted to show that [C.M] told [defendant] that she needed a place to stay because her Dad had kicked her out.  This conversation would show that she was angry, and also that she garnered sympathy from her friend, [the defendant], and chose to stay with him instead of her friend Mr. Shandore."  Also on appeal, defendant asserts the "statements were not to show that what she said was true, but rather she stated them to [defendant] in order to gain a place to stay."

We first note that, although the trial court twice asked defense counsel what testimony he hoped to elicit from defendant regarding his conversations with C.M., counsel only generally stated he was seeking to admit "conversations" between defendant and C.M.  After the State first raised its hearsay objection, the trial court asked defense counsel what testimony he sought, and counsel responded "[t]he statements that she would have made in response to the conversations they had which would lead to her state of mind."  The court then asked: "With regard to what?"  Defense counsel responded "to whether the act between the two of them was consensual or not, which is the whole guts of the case and the charges.  Her mind, her intent has to be interpreted by her actions, and that would be important evidence to the jury to understand what her intent was."  The court again asked for a proffer, to which defense counsel responded: "the information we're trying to get from this witness is conversations that were made between him and the complainant, and her responses and discussion that would show that the issue of consent was discussed . . . that evening and that she

-5-

consented to sexual relations, which would go to her intent under 803.3 . . . ." Because it is only for the first time on appeal that defendant more specifically states his intended testimony, we cannot conclude on this record that the trial court erred in sustaining the State's hearsay objection.

Moreover, even if the trial court and the State understood the specifics of the testimony defense counsel sought to elicit, defendant was not harmed by any error because substantially similar testimony was later received into evidence. On appeal, defendant complains he was prevented from testifying that C.M. made certain statements to him "in order to gain a place to stay." However, after the court sustained the State's objection, defendant testified that C.M. was mad, she was "getting more angry and being expletive in her conversation towards certain people," and he and C.M. discussed that she "didn't have a place to stay at" because "she was thrown out" by her father. Defendant testified C.M. "started getting belligerent as far as what happened to her," "she wanted to go to an excess [sic] action, to go back to the apartment where she had come from. . . . She wanted to go back there and do something and I stopped her." Because substantially similar testimony was later received into evidence, we cannot conclude on this record that the error, if any, harmed defendant.

### BOLSTERING

In his fourth issue, defendant complains the trial court erred when it permitted a police officer to testify C.M. seemed "truthful and believable." On appeal, defendant contends defense counsel "re-urged" his hearsay objection, which preserves his argument on appeal that the officer's statement was improper bolstering under Texas Rule of Evidence 608(a). However, defendant made no objection at trial. Instead, our review of the record reveals that the hearsay objection was made by the State and defense counsel was "re-urging" his argument that the officer should be allowed to

testify to certain specifics of what C.M. told him about the assault. Because defendant did not object to the officer's testimony at trial, this issue has not been preserved for review. *See* TEX. R. APP. P. 33.1(a); *Knox v. State*, 934 S.W.2d 678, 687 (Tex. Crim. App. 1996).

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice

Do not publish