

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00063-CR

_____

DESMOND JUWON WOODS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Morris County, Texas
Trial Court No. 10,920CR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A jury convicted Desmond Juwon Woods of criminal mischief causing a pecuniary loss of $20,000.00 or more, but less than $100,000.00, and Woods was sentenced to eight years' imprisonment. In his sole point of error on appeal, Woods challenges the legal sufficiency of the evidence supporting the jury's finding of guilt.[1] Because we find that legally sufficient evidence supports Woods' conviction, we affirm the trial court's judgment.

## I. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

---

[1] In companion cause number 06-15-00068-CR, Woods also appeals from a conviction of theft of copper tubing having a value of less than $20,000.00.

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. at 240.

Pursuant to its indictment, the State was required to prove that (1) Woods (2) intentionally or knowingly (3) damaged or destroyed (4) chicken houses, (5) without the effective consent of Alice Bullock, (6) and caused pecuniary loss of $20,000.00 or more, but less than $100,000.00. *See* TEX. PENAL CODE ANN. § 28.03(a)(1) (West Supp. 2015); Act of May 23, 2009, 81st Leg., R.S., ch. 638, § 1, sec. 28.03(b)(5), 2009 Tex. Gen. Laws 1433, 1433 (amended 2015) (current version at TEX. PENAL CODE ANN. § 28.03(b)(5) (West Supp. 2015)).

In this case, Woods challenges only the element of identity.

## II. The Evidence at Trial

Alice Bullock, a poultry grower for Pilgrim's Pride, owns six large, commercial-grade chicken houses. Because a computer-based system controls the precise feeding of the chickens, each of the houses is supplied with electricity and is equipped with hundreds of feet of copper wire coated with Styrofoam insulation. Bullock raises chickens from hatchlings to maturity; upon their attainment of maturity, the chickens are then retrieved by Pilgrim's Pride. After all of her chickens are removed, Pilgrim's Pride allows several weeks to elapse to allow Bullock to rest and prepare her chicken houses for a fresh delivery of baby chicks so the process can be repeated.

At trial, Bullock testified that Pilgrim's Pride picked up all of her chickens in mid-November 2012. Because there were no chickens in the houses, Bullock shut down the electricity and had no reason to re-enter the houses until representatives of Pilgrim's Pride informed her of an upcoming December 26, 2012, delivery of more baby chicks. When Bullock went to prepare her chicken houses on December 24, she discovered that four of the houses had no electricity because the copper wire that ran through them had been cut, "jerked off the wall," and removed. She immediately contacted the Morris County Sheriff's Office to report the damage and the theft.

Hershel Stroman, a deputy with the Morris County Sheriff's Office, met Bullock at the chicken houses and surveyed the damage. Stroman testified that hundreds of feet of copper wire had been cut and pulled through the Styrofoam insulation surrounding the wire. Randy Acker, owner of Acker Poultry Supply, testified that he repaired the chicken houses by reinstalling the copper wiring, reinsulating the sidewalls by restoring the Styrofoam that had been pulled down when the wires were removed, and repairing damaged vent door deflectors at a total cost of $27,423.05.[2]

Both Bullock and Stroman testified that the brittle insulation gave away the perpetrator's escape route because it formed "a clear trail of foam leading through the woods." Stroman testified that they followed the trail to a house "[a]pproximately three quarters . . . [to] half a mile" from the chicken houses which belonged to Woods, a Pilgrim's Pride employee. According to Stroman, the trail ended on Woods' property in a burn pile that still contained some Styrofoam insulation

---

[2]The amount of pecuniary loss under Chapter 28 of the Texas Penal Code, "if the property is damaged, is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." TEX. PENAL CODE ANN. § 28.06 (West Supp. 2015).

pieces. Stroman took photographs of the property and the burn pile and focused his investigation on locating the copper wire.

Stroman visited Daingerfield Iron & Metal, a business that purchased copper, and spoke with the owners, Mike and Jessica Rice. As a result of this meeting, Stroman discovered that Woods had made eleven separate sales of copper, totaling approximately 350 pounds, to Daingerfield Iron & Metal in the period from November 20 to December 20, 2012.[3] Stroman examined copper wire that Woods had recently sold to Daingerfield Iron & Metal and discovered that (although it did not appear to be the wire removed from Bullock's chicken houses) it gave the appearance of having been burned in a fire. According to Stroman, one of Bullock's employees, Robin Allen, claimed that she had seen a tall man with a black shirt around the chicken houses December 19, 2012. Woods is six feet, three inches tall. Based on this information, Stroman obtained a warrant for Woods' arrest.

## III.     Legally Sufficient Evidence Supports Woods' Conviction

A case based on circumstantial evidence is built brick by brick; the burden to build the wall called "beyond a reasonable doubt" is met only after a sufficient number of evidentiary bricks have been laid. In other words, "[e]ach fact need not point directly and independently to the guilt" of the accused. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). If a conclusion is warranted by the combined cumulative force of all incriminating circumstances, the evidence is sufficient. *Id*.

---

[3]A receipt from each transaction included a copy of Woods' driver's license.

In this case, the jury heard that significant amounts of copper wire had been stolen from Bullock's chicken houses between mid-November and December 24, 2012. The evidence established that the perpetrator left behind a trail of Styrofoam insulation and that a tall man had been seen around the chicken houses around that time. Stroman testified that the trail left by the bits of Styrofoam led him to a burn pile on Woods' property, which still contained bits and pieces of the insulation. Stroman also learned that Woods, a tall man, sold a significant amount of copper wire several times between mid-November and mid-December.

We conclude that the inferences necessary to establish that Woods was the perpetrator of the charged crime were reasonable "based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Accordingly, we find the evidence legally sufficient to support the jury's finding of guilt. We overrule Woods' sole point of error.

## IV.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     December 22, 2015
Date Decided:       December 29, 2015

Do Not Publish